IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALABAMA & GULF COAST RAILWAY, :
LLC, et al.,
 :
    Plaintiffs,
 :
vs.                                                                                             CA 10-0352-WS-C
 :
UNITED STATES OF AMERICA, *in
personam*, and M/V LAWSON and BARGE :
CHOCTAWHATCHEE, *in rem*,
 :
    Defendants.

## ORDER

This cause is before the Court on plaintiff Alabama & Gulf Coast Railway, LLC's motion to compel production of documents (Doc. 40) and the response in opposition filed by defendant United States of America (Doc. 44). Upon a consideration of these pleadings, with attachments, as well as all other pertinent pleadings in this case, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a).

## FINDINGS OF FACT

    1.    This admiralty negligence action, filed July 9, 2010, arises out of the September 26, 2008 allision between the M/V LAWSON and its crane barge, the

1

CHOCTAWHATCHEE, and Alabama & Gulf Coast Railway's bridge over the Black Warrior River at mile post 728.9. (*See* Doc. 1, VERIFIED COMPLAINT.)

> 9. The United States had a duty to ensure that the Vessels, which were in the custody and control of its agency, the Army Corps, did not collide with and damage the aforementioned bridge.
>
> 10. Due to the negligence, fault and lack of due care of Defendant United States, *in personam* (through its agency, the Army Corps), and the Vessels, *in rem*, the upper boom shield of the Choctawhatchee's crane struck the descending bridge deck causing substantial damage to the bridge structure.
>
> 11. The damage to the bridge was not caused by any fault, neglect, or lack of due care on the part of AGR or its agents.
>
> 12. The accident and AGR's resulting damages, as hereinafter described, were proximately caused by the negligence of Defendant United States, *in personam* (through its agency, the Army Corps), and the Vessels, *in rem*.

(Doc. 1, ¶¶ 9-12 (emphasis in original).) The United States answered the complaint on September 13, 2010. (Doc. 17.)

2. On October 28, 2010, one day prior to filing the Rule 26(f) report (*see* Doc. 24), Alabama & Gulf Coast Railway filed notice of serving its first set of interrogatories and requests for production of documents (*see* Doc. 23).

3. The Rule 16(b) scheduling order was entered in this case on November 2, 2010. (Doc. 25.) In pertinent measure, this order set a discovery deadline date of July 1, 2011 (*id.* at ¶ 2) and noted that the issues subject to discovery were those set forth by the parties in paragraph 4 of the Rule 26(f)

report (*id.* at ¶ 1).¹ This order was later modified, upon the parties' joint motion. (*See* Doc. 37; *compare id. with* Doc. 36.)²

4. On January 24, 2011, counsel for Alabama & Gulf Coast Railway penned a letter to counsel for the United States requesting a complete supplemental response to plaintiff's request for production number 12, same seeking the personnel files of six individuals (i.e., Willie Thompson, Mike Parker, Captain Jeffrey Williams, Chief Engineer Charles Merchant, Assistant Engineer Frank Hill, and Deckhand James Crowell). (Doc. 40, Exhibit A.) The United States declined to produce those personnel files because of its belief that the files

---

[1] Paragraph 4 of the Rule 26(f) report reads, in relevant part, as follows:

Discovery will be needed on the following subjects:

    i.    Alleged negligence, fault, and lack of due care, of the parties[;]

. . .

    iii.    Conduct of the Plaintiffs, the Defendant, and their representatives on the date of the accident[;]

    iv.    Competency and experience of the Plaintiffs' and Defendant's representatives and employees[; and]

    v.    Communications by, among, and between the Plaintiffs' representatives and employees and between the Defendant's representatives and employees[.]

(Doc. 24, ¶ 4)

[2] The discovery completion date has been moved to July 14, 2011. (Doc. 37, ¶ 2.)

were protected by the Privacy Act but, in addition, also objected to producing the entire files of the noted individuals based on "grounds of overbreadth and relevance." (*Id.* at 2.)[3] In the January 24, 2011 letter, counsel for Alabama & Gulf Coast Railway let it be known that "[p]rivacy concerns" could be "addressed by an appropriate protective order[]" and that the information requested was relevant because what was being sought was "[i]nformation on the fitness, qualifications, prior accidents, disciplinary actions, etc., against the vessel's crew[.]" (Doc. 40, Exhibit A, at 2.)

     5.     By letter dated March 18, 2011, counsel for the United States declined to produce the requested files. (Doc. 40, Exhibit B.)

> I write regarding your request for the personnel files of the crew of the LAWSON and the CHOCTAWHATCHEE. The United States stands on its objections to this request based on relevance and the Privacy Act. We have reviewed Captain Williams' personnel file and it does not contain any material relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence. We do not see how the records of the remainder of the crew could be relevant in this matter given their lack of role in the accident.

(*Id.*)

---

[3] According to the moving plaintiff, the United States responded to its requests for production of documents on January 4, 2011. (Doc. 40, at ¶ 3.)

6. On March 31, 2011, counsel for the moving plaintiff conferred in a face-to-face meeting with counsel for the United States but was unable to resolve the discovery dispute. (Doc. 40, ¶ 6.)

7. Alabama & Gulf Coast Railway filed the instant motion to compel on April 25, 2011, seeking the ordered production of the personnel files sought in its request for production of documents No. 12 under a protective order. (*See* Doc. 40, at ¶¶ 8-9.)

> Plaintiff shows that the requested information is relevant and otherwise subject to discovery under Rule 26 of the Federal Rules of Civil Procedure. These files may show any disciplinary actions, prior incidents, training, or other relevant information. Further, the material and information contained in these files is germane to the claims and defenses at issue herein. In general, this information is admissible, and if not admissible itself, then it is—at a minimum—likely to lead to the discovery of admissible evidence."

(*Id.* at ¶ 7.)

8. The United States filed its response on May 10, 2011. (Doc. 44.) Therein, the United States contends that the personnel files sought by Alabama & Gulf Coast Railway are not only protected by the Privacy Act but, as well, are not relevant to any claims asserted by the moving plaintiff in this action. (*See id.*)

> The LAWSON and CHOCTAWHATCHEE had six crew members on the date of the accident. One (Assistant Engineer Frank Hill) was off duty and slept through the accident in his quarters. Two others (Deckhand James Crowell and Crane Operator Willie Thompson) were in the restrooms in their respective quarters at the time of the accident. The other Crane Operator, Mike Parker, was sitting at a table in the conference room getting a snack. Chief

Engineer Charles Merchant was in the interior of the LAWSON, in the engine room. Only Captain Williams was involved in the operation of the vessel at the time of the accident.

. . .

Plaintiff's sole argument that each crew members' personnel files are discoverable is contained at paragraph 7 of [its] motion. There, Plaintiff states that the "files may show any disciplinary actions, prior incidents, training, or other relevant information." Certainly, the request for production of the entire files is overbroad.

The training, disciplinary history, and "prior incidents" involving the five crew members who had no role and are not alleged to have had a role in this accident are plainly not relevant to the claims or defenses of any party to this matter. Plaintiff has also stated no argument regarding how any information regarding "disciplinary actions, prior incidents, [or] training" which may be contained in Captain Williams' personnel file are relevant to the question of whether Captain Williams[] was negligent in his operation of the LAWSON during *this accident*. Plaintiff has made no allegations regarding negligence by the United States in its training or supervision of the crew of the LAWSON, and such allegations would likely be outside the United States['] waiver of sovereign immunity. In any event, Counsel for the United States has reviewed Captain William[s'] personnel file and found that it contains no material relevant to this case.

The relevance of the information Plaintiff[] state[s] [it] seek[s] from the personnel files is also undercut by the fact that Plaintiff by and large did not ask questions about these matters during the [depositions of the] six crew members on March 3 and 4. Plaintiff's counsel inquired whether Captain Williams had been involved in any other collisions while operating vessels for the Army Corps of Engineers, and the answer was that he had not. This question was not asked of any of the other crew members. Plaintiff asked no crew member about disciplinary actions. While Plaintiff inquired about the crew members' prior experience working on vessels and about their Coast Guard qualifications, Plaintiff did not inquire about training by the Army Corps of Engineers. Plaintiff had ample

opportunity to inquire into the training, disciplinary history, or accident history of any crew member, to the extent Plaintiff believed that information was relevant to its case, and declined to do so.

(*Id*. at 2 & 5-6 (emphasis in original; internal footnotes omitted).)

## **CONCLUSIONS OF LAW**

1. The present motion to compel filed by Alabama & Gulf Coast Railway requires the undersigned to consider the Privacy Act, 5 U.S.C. § 552a, inasmuch as the personnel files responsive to the moving party's request for production #12 are documents which the United States claims are protected under the Act. (*See* Doc. 44.)

2. Section 552a(b) specifically provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains,"[4] unless, however, disclosure of the record is made "pursuant to the order of a court of competent jurisdiction[.]" 5 U.S.C. § 552(a)(b) & (11).

3. In considering the import of the Privacy Act, and in particular paragraph (11), the Circuit Court for the District of Columbia long ago

---

[4] Such records, of course, include personnel files. *See, e.g., Stiward v. United States*, 2007 WL 2417382, *1 (E.D. La. Aug. 24, 2007) ("The Privacy Act provides that a government agency may not disclose certain records, including personnel files of its employees, subject to eleven exceptions.").

7

recognized that the Act "does not create a qualified discovery privilege as that concept is generally understood[,]" nor does it "create any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery." *Laxalt v. McClatchy*, 809 F.2d 885, 888 (D.C. Cir. 1987). Instead, "a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and the test of discoverability is the relevance standard of Rule 26(b)(1) of the FRCP." *Id.* at 889; *see also, e.g., United States v. Lake County Bd. of Commissioners,* 2006 WL 1660598, *1 (N.D. Ind. June 7, 2006) ("The Privacy Act prohibits a federal agency from disclosing certain personal information without an 'order of a court of competent jurisdiction.' In determining whether to issue such an order, the usual discovery standards of Federal Rule of Civil Procedure 26(b)(1) apply." (internal citation omitted)), *aff'd,* 2006 WL 2051729 (N.D. Ind. July 20, 2006).

4. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). Under this rule, relevancy has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). However, the scope of discovery is not without

8

limits, the Supreme Court itself recognizing that "'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Id.*, quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Certainly, for instance, "[d]iscovery of matter not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)." *Id.* at 351-352, 98 S.Ct. at 2390 (internal quotation marks omitted); *cf. Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570 (11th Cir. 1992) ("The scope of discovery in Title VII cases is not without limits. The information sought must be relevant and not overly burdensome to the responding party." (internal footnote omitted)). More to the point, "'[n]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case.'" *Food Lion, Inc. v. United Food & Commercial Workers Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997), quoting 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE CIVIL 2d § 2008, pp. 105-06 (1994); *see also In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" (citation omitted)). Indeed, "[t]he relevancy requirement 'should not be misapplied so as to allow fishing expeditions in discovery.'" *United States v. Lake County Bd. of*

9

*Commissioners, supra,* at *1, quoting *Zenith Electronics Corp. v. Exzec, Inc.*, 1998 WL 9181, *2 (N.D. Ill. Jan. 5, 1998).

     5.     Against this factual and legal backdrop, the undersigned finds that the only personnel file with any conceivable relevance in this negligence action is the personnel file of Captain Jeffrey Williams. After all, Captain Williams was operating the LAWSON and acting as lookout at the time of the allision and plaintiffs allege that the bridge sustained damage as a result of negligent operation of the LAWSON (pushing the crane barge CHOCTAWHATCHEE). The moving plaintiff has not established the relevancy of the personnel files of any of the remaining crewmembers inasmuch as the discovery conducted to date, including the depositions of these other crewmembers, establishes that none were involved in the operation of the LAWSON, or as lookouts, when the upper boom shield of the CHOCTAWHATCHEE's crane allided with the bridge. Indeed, underscoring the lack of relevancy of these five individuals' personnel files is the fact that these five men were not asked in their depositions about disciplinary actions, prior incidents, and training (Doc. 44, at 5-6). *Cf. Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) ("[The defendant] correctly notes that there is a strong public policy against the discovery of personnel files. Consequently, the discovery of such files is permissible only if '(1) the material sought is clearly relevant and (2) the need for discovery is compelling because

the information sought is not otherwise readily obtainable.' The plaintiffs have failed to meet this burden. Their argument in support of this request makes only a general showing of relevance and no showing as to why the material which they seek is not available from other sources." (internal citation omitted)). The moving party's desire to now try to compel disclosure of the personnel files of these five individuals amounts to nothing but a fishing expedition, *see Weems v. Corrections Corp. of America*, 2010 WL 2640114, *2 (E.D. Okla. June 30, 2010) (defendant's inability to specifically describe what it sought amounted to a fishing expedition for helpful information); therefore, the motion to compel production of the personnel files of Willie Thompson, Mike Parker, Charles Merchant, Frank Hill, and James Crowell is **DENIED**.

6.  Turning to the personnel file of Captain Williams, the undersigned notes that while there may be some material in that file that is relevant to this case the plaintiff is not entitled to the entire file. *Compare Weems, supra,* at *1 ("Personnel files are in general entitled to heightened protection[.]") *with Ojeda-Sanchez v. Bland Farms, LLC*, 2009 WL 2365976, *2 (S.D. Ga. July 31, 2009) (noting that personnel files, as opposed to payroll records, "involve more complex and varied privacy concerns[]" since they often contain "'an individual's unlisted address and telephone number, marital status, . . . medical background, credit history (such as requests for garnishment of wages), and other work-related

problems.'").[5] Moreover, the portions of Williams' personnel file that should be produced to the plaintiff are to be produced pursuant to a protective order which will be entered contemporaneously herewith. *Compare Laxalt, supra,* 809 F.2d at 889 ("[W]hen the District Court considers a request for a Privacy Act order in the discovery context it must consider the use of protective orders and the possibility of *in camera* inspection.") *with Hernandez v. United States*, 1998 WL 230200, *2 & 3 (E.D. La. May 6, 1998) (district court ordered the United States to produce the personnel file of Postal Service driver involved in automobile accident pursuant to an appropriate protective order).[6] Accordingly, the moving plaintiff's motion to compel is **GRANTED** to the limited extent that the United States is **ORDERED** to produce, pursuant to the protective order entered contemporaneously herewith, those portions of Captain Williams' personnel file reflecting disciplinary actions, prior incidents/accidents, training, promotions, and medical history; the government is specifically authorized to redact from the personnel file any credit history, financial, or salary information, as well as any

---

[5] *Cf. Rowlin v. Alabama Dept. of Public Safety,* 200 F.R.D. 459, 461 (M.D. Ala. 2001) ("[C]ourts have the duty to pare down overbroad discovery requests under Rule 26(b)(2), which provides that information may sometimes be withheld, even if relevant.").

[6] The moving plaintiff does not object to entry of a protective order. (*See* Doc. 40, at ¶ 8 ("Plaintiff AGCR, as originally offered to counsel for the United States, will agree to a Protective Order issued by this Court covering the employment files produced by the United States.").)

personal information such as marital status, names of his spouse and children (if any), and unlisted telephone numbers and addresses.

## CONCLUSION

In light of the foregoing, plaintiff Alabama & Gulf Coast Railway, LLC's motion to compel production of documents (Doc. 40) is **GRANTED** solely with respect to those portions of Captain Jeffrey Williams' personnel file identified above, same to be produced pursuant to the protective order entered contemporaneously herewith; the motion to compel is otherwise **DENIED**. The United States is to produce the personnel file of Captain Williams, as described above, not later than the close of business on **May 23, 2011**.

**DONE** and **ORDERED** this 13th day of May, 2011.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**